TRAJAM REALTY CORPORATION, Appellant, v ABRAHAM J. HIRSCHFELD et al., Respondents.

First Department, July 1, 1982

APPEARANCES OF COUNSEL

*Edward J. Reilly* of counsel (*Milbank, Tweed, Hadley & McCloy,* attorneys), for appellant.

*Ralph L. Ellis* of counsel (*Judith L. Spanier* with him on the brief; *Shea & Gould,* attorneys), for respondents.

### OPINION OF THE COURT

MARKEWICH, J.

This is an action pursuant to RPAPL article 15 "to compel determination of a claim to real property." The relief sought is primarily declaratory in scope, the thrust of which is to unburden plaintiff-appellant's parcel of choice Manhattan real estate of options to extend a leasehold and subleasehold for 20 years beyond their present termination date in 1989. This appeal derives from a motion by plaintiff-appellant for summary judgment on its first two causes of action. The motion was denied. However, on search of the record Special Term awarded defendants-respondents summary judgment dismissing the first and second causes

in the complaint. These causes sought declaratory, as well as injunctive, relief addressed to the record status of the extension options as they affected the lease.[1] Resolution of the appeal requires disentanglement of a tortuous skein of background transactions, all centered on the property. There is no dispute as to the facts. A nonparty, Chatham Associates, was, as of the beginning of 1969, owner of the subject real estate, a select business location on Manhattan's West Side. Chatham gave a mortgage on the property to Central Savings Bank, also a nonparty, to secure a substantial debt. Chatham also assigned to the bank the rents and profits of the plot to secure this obligation, the assignment agreement reciting that, upon default in payment, the mortgagee might "take possession of the mortgaged premises, and have, hold, manage, lease and operate * * * as the Bank may deem proper". Upon full payment, the assignment would become void. A lease dated March 28, 1947, as thereafter extended, gave occupancy of the premises until a date in June, 1989 to Radio System, Inc., simultaneously with a certain sublease. In May, 1977, defendant Hirschfeld took over the leasehold interest as tenant and Radio City Parking, Inc., acquired the sublease.

To revert to the 1969 assignment of rents and profits by Chatham to Central Savings Bank, it sold the premises to Sutton Associates, which thereby became successor mortgagor and assignor in place of Chatham. In May, 1976, Sutton defaulted on the mortgage indebtedness, and Central Savings Bank instituted foreclosure in Supreme Court against Chatham, Sutton, and the instant defendants. By order of May 28, 1976, one Starke was appointed receiver of rents and profits; he was authorized specifically to lease the premises for a period not to exceed one year.

On December 12, 1977, Central Savings Bank assigned its mortgage interest to Pioneer National Title Insurance Company, which assigned in turn to 152 West 50 Street, Inc., of which corporation defendant 211 East 43 Street Corp. is successor in interest. Both the 152 and 211 corporations were and continued to be controlled by defendant

---

1. Third and fourth causes charging slander of plaintiff's title to the subject property and breach of agreement were severed at Special Term, and are not before us on this appeal.

Hirschfeld. On the basis that, under the default, the 152 corporation had become mortgagee in possession, through a chain of succession reaching back to the 1969 assignment, Hirschfeld wrote to Starke, the receiver, on December 15, 1977, requesting permission to have the lease and sublease (terminable on June 30, 1989) extended to July, 2009 by the device of giving both tenant and subtenant options to renew for an additional 20 years. On December 31, 1977, that permission was granted, and a lease and sublease were entered into between the 152 corporation on the one hand, and tenant Hirschfeld and subtenant Radio City Parking, Inc., on the other.[2] These memoranda of lease were not recorded until July 24, 1978, one day prior to the scheduled judicial sale of the premises. At that time, Sutton Associates exercised its right of redemption. Following redemption and satisfaction of the mortgage, the premises were sold to plaintiff-appellant Trajam Realty Corporation on February 4, 1981. It is to be remembered that, upon satisfaction of the mortgage, the rent assignment also expired and Hirschfeld was left with a lease and sublease, questionably extended to 2009.

Trajam brought the instant proceeding to remove the cloud on its title deriving from the 20-year extensions of lease to 2009, and to have them declared null and void. On this score, plaintiff argues that there was no such merger of fee — which Hirschfeld never owned, the fee being in Sutton and then Trajam — and leasehold (Hirschfeld and his wholly owned corporations) which would permit the grant of the leasehold options. Further that Starke, the receiver, acted contrary to his court-granted authority in permitting the extension of lease, nor could he delegate such authority to the Hirschfeld interests. Plaintiff avers also — and we agree — that the assignment of rents and profits did not have the effect of granting to the 152 corporation authority to enter into the option agreement to the derogation of plaintiff's reversionary interests and its right to redemption. Further, those options were effective only in the future and would not protect mortgagee's

2. It is to be noted that Special Term specifically found that the chain of events gave Hirschfeld the authority to do this, and, further, that specifically Special Term accepted as valid the receiver's authority to consent to the extension beyond the authorized term of one year. We disagree, as will be seen, with these holdings.

security interests; indeed, they would injure those interests. Starke had leasing power nondelegable, and even that rigidly circumscribed to no more than one year.

To which defendants reply that, having the permission of the receiver, they were free to do what was done; that plaintiff acquired the property cognizant, by reason of recorded instruments, of the cloud on title and should not be heard to complain; that defendants' acts were entirely proper in that their interests were to be protected by assurance of the future income to be derived from the options.

A mortgagee does not have an absolute fee interest, even when there has been default. A mortgagee's powers should be exercised to secure the underlying debt. (*National Bank of North Amer. v Tengard Realty Corp.*, 34 AD2d 934; *New York Life Ins. Co. v Fulton Dev. Corp.*, 265 NY 348.) The acts of the wholly owned 152 corporation in effecting the extension options, not exercisable until 1989, were unnecessary to protect an assignee's present interests. The receiver's powers were improperly exercised, far beyond the authority to collect rents and make short-term leases. And that authority was his alone, not that of the mortgagee. It was completely inconsistent with plaintiff's reversionary interest and right of redemption.

In the circumstances depicted, the complaint did state proper causes of action for the relief sought, and the first and second causes should not have been dismissed. Plaintiff's motion having been brought under CPLR 3212, Special Term searched the record and awarded summary judgment to defendants-respondents dismissing the first and second causes in the complaint. We have also searched the record and agree with Special Term that there are no factual issues. On this record therefore we deem it proper to sustain the causes stricken by Special Term and, since we find the facts sufficient therefor, to award summary judgment to plaintiff for the relief sought. It has been demonstrated that the extension grants were given by defendant Hirschfeld to himself in the exercise of improperly assumed powers for an improper purpose and consented to by the one in nominal control, the receiver, in an improvident exercise of his own authority. The extensions

were therefore invalid *ab initio.* They should be canceled and removed from record, where they now constitute a warning to any prospective purchaser,[3] thus virtually destroying the sales value of the property. (Cf. *Chittick v Thompson Hill Dev. Corp.,* 259 NY 223.)

Accordingly, the judgment, Supreme Court, New York County (MARESCA, J.), entered November 17, 1981, should be reversed, on the law, to the extent appealed from, that portion of the judgment which, on search of the record, awarded summary judgment to defendants-respondents dismissing the first and second causes in the complaint vacated, the first and second causes of action asserted in the complaint reinstated, and plaintiff-appellant's motion for partial summary judgment on those causes granted, and summary judgment directed to declare null and void and cancelable of record the subject recorded lease and sublease beyond their current expiration, in June, 1989, with costs and disbursements.

CARRO, J. P., LUPIANO, BLOOM and ASCH, JJ., concur.

Judgment, Supreme Court, New York County, entered on November 17, 1981, unanimously reversed, on the law, to the extent that the portion of the judgment which, on search of the record, awarded summary judgment to defendants-respondents dismissing the first and second causes in the complaint is vacated, the first and second causes of action asserted in the complaint reinstated, and plaintiff's motion for partial summary judgment on those causes granted, and summary judgment directed to declare null and void and cancelable of record the subject recorded lease and sublease beyond their current expiration, in June, 1989. Appellant shall recover of respondents $75 costs and disbursements of this appeal.

---

**3.** It is to be observed that Special Term held that plaintiff itself had ignored the caveat displayed by the recording in purchasing the property from Sutton.